IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| DEBRA L. WARE, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| V. | § | NO. 11-CV-1133-P |
| | § | |
| CAROLYN W. COLVIN, | § | |
| Acting Commissioner of Social Security,[1] | § | |
| | § | |
| Defendant. | § | |

## ORDER ACCEPTING FINDINGS AND RECOMMENDATION
## OF THE UNITED STATES MAGISTRATE JUDGE

On April 5, 2012, the assigned Magistrate Judge issued Findings, Conclusions, and Recom-

mendation ("FCR") in which she recommended that the Court deny Plaintiff's Motion for Summary

Judgment (doc. 21), grant Defendant's Motion for Summary Judgment (doc. 23),[2] and affirm the

Commissioner's decision to deny Supplemental Security Income ("SSI") and Disability Insurance

Benefits ("DIB") to Plaintiff Debra Ware.  Plaintiff timely objected to the recommendation.  (*See*

Pl.'s Obj'ns to FCR [hereinafter Obj'ns], doc. 27.)  She urges the Court to reverse the decision of

the Commission and remand her case for further consideration because she has been prejudiced.  (*Id.*

at 9.)  The Commissioner has filed no response to the objections.  For the reasons that follow, the

Court accepts the FCR, as supplemented herein, after reviewing all relevant matters of record,

including the FCR and the filed objections, in accordance with 28 U.S.C. § 636(b)(1) and Fed. R.

---

[1] On February 14, 2013, Carolyn W. Colvin became Acting Commissioner of Social Security. In accordance with Fed. R. Civ. P. 25(d), she is automatically substituted as the defendant in this action.

[2] Document 23 also includes the Commissioner's response to Plaintiff's motion for summary judgment.  For ease of reference, the Court will often cite the document as "Resp."

Civ. P. 72(b)(3).

## I.   Authority of Magistrate Judge and Standard of Review

Section 636(b)(1)(B) of Title 28 of the United States Code grants magistrate judges authority to issue findings and recommendations regarding dispositive motions in cases referred to them. The statute provides for the filing of written objections to proposed findings and recommendations and for a de novo determination of matters "to which objection is made." Objections asserted in accordance with this provision serve "to narrow the dispute" and enable district judges "to focus attention on those issues – factual and legal – that are at the heart of the parties' dispute." *Thomas v. Arn*, 474 U.S. 140, 147 & n.6 (1985). And § 636(b)(1) "does not on its face require any review at all . . . of any issue that is not the subject of an objection." *Id.* at 149. Nevertheless, "while the statute does not require the judge to review an issue *de novo* if no objections are filed, it does not preclude further review by the district judge, *sua sponte* or at the request of a party, under a *de novo* or any other standard." *Id.* at 154.

Rule 72(b)(3) of the Federal Rules of Civil Procedure likewise provides for a de novo determination of "any part of the magistrate judge's disposition that has been properly objected to." Rule 72(b)(2) requires the objecting party to file "specific written objections" and grants other parties fourteen days to respond to such objections. While Rule 72(b) does not facially require any review in the absence of a specific objection, the advisory committee notes following its adoption in 1983 state: "When no timely objection is filed, the court need only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation."

Consistent with § 636(b)(1) and Rule 72(b)(3), the Court reviews the findings and recommendation of the Magistrate Judge in this case. It "may accept, reject, or modify the recommended

disposition; receive further evidence; or return the matter to the magistrate judge with instructions."

Fed. R. Civ. P. 72(b)(3); *accord* 28 U.S.C. § 636(b)(1). Even if no objection has been asserted, the

presiding district judge "has the authority, if not the duty, to make a correct final determination."

*Sweeney v. Astrue*, 796 F. Supp. 2d 827, 830 (N.D. Tex. 2011).

## II.     Objections

Plaintiff objects that the Magistrate Judge did not address a failure of the Administrative Law

Judge ("ALJ") to review and weigh opinion evidence that Plaintiff required additional supervision

or a job coach as stated by Dr. D'Angelo and vocational counselors Steven Carter and Patrick Jenke.

(Obj'ns at 1-7.)  She contends that the failure of the ALJ makes his residual functional capacity

("RFC") determination legally deficient. (*Id.* at 1.)  She further objects that the Magistrate Judge did

not apply the appropriate legal standard of judicial review. (*Id.* at 7-8.)

### A.     <u>Social Security Ruling 85-16</u>

Plaintiff discusses Social Security Ruling ("SSR") 85-16 to some extent when addressing

both objections. (*See* Obj'ns at 1-2, 8.)  Although she does not specifically object to any finding of

the Magistrate Judge regarding SSR 85-16, her briefing on the objections shows that she accepts

such findings only reluctantly. (*See id.* at 1-2 (discussing SSR 85-16 and the Magistrate Judge's

finding that it did not require the ALJ to take administrative notice of additional supervision before

launching into Plaintiff's first specific objection with "[b]ut even if the ALJ was not required to take

administrative notice of additional supervision . . .").)  Given this reluctant acceptance and the con-

nection of SSR 85-16 to the specifically asserted objections, the Court exercises its discretion to

review the SSR 85-16 issue de novo.

The purpose behind SSR 85-16 is "[t]o state the policy and describe the issues to be consid-

ered when an individual with a mental impairment requires an assessment of the residual functional capacity (RFC) in order to determine the individual's capacity to engage in basic work-related activities." *Titles II and XVI: Residual Functional Capacity for Mental Impairments*, SSR 85-16 (PPS-120), 1985 WL 56855, at *1 (S.S.A. Nov. 30, 1984). It provides in relevant part that

> an individual, in whom the only finding in intellectual testing is an IQ between 60 and 69, is ordinarily expected to be able to understand simple oral instructions and to be able to carry out these instructions under somewhat closer supervision than required of an individual with a higher IQ. Similarly, an individual who has an IQ between 70 and 79 should ordinarily be able to carry out these instructions under somewhat less close supervision.

*Id.* at *3.

Plaintiff contends that, for individuals with IQ scores between 60 and 69, SSR 85-16 requires the ALJ to take administrative notice that the individual required "somewhat closer supervision than required of an individual with a higher IQ." (Obj'ns at 1-2.) But the Magistrate Judge properly found that the ALJ had not implicitly found that Plaintiff's IQ score was between 60 and 69. (*See* FCR at 9-10.) As recognized by the Magistrate Judge, (*id.* at 9), the ALJ specifically noted that Plaintiff's recent IQ scores were "in the mid-70s to 80," (Tr. at 25).[3] The fact that the ALJ independently considered other severity criteria required to meet a listed impairment (Listing 12.05) at Step 3 of his sequential evaluation,[4] (*see* Tr. at 25-26), does not imply that the ALJ found the IQ criteria satisfied. The Magistrate Judge, furthermore, properly recognized that SSR 85-16 does not mandate that Plaintiff's RFC include a limitation regarding a need for close supervision because Plaintiff had IQ scores above 69 in addition to scores between 60 and 69. (*See* FCR at 14.) Obviously, "the only

---

[3]"Tr." denotes the transcript of the administrative proceedings.

[4]A five-step evaluative sequence is used to determine whether an adult claimant is disabled. *See Audler v. Astrue*, 501 F.3d 446, 447-48 (5th Cir. 2007).

finding" is not an IQ between 60 and 69 given Plaintiff's scores above 69. The Court finds no error in not applying SSR 85-16 to mandate an RFC limitation for closer supervision. And, as discussed more thoroughly in the next section, the ALJ's RFC determination recognizes a limitation for visual learning, which adequately encompasses a need for closer supervision or job coach.

### B.   Failure to Review and Weigh Opinion Evidence

Plaintiff argues that "even if the ALJ was not required to take administrative notice of additional supervision," the ALJ was still obligated to weigh opinion evidence that additional supervision was necessary. (Obj'ns at 2.) She specifically objects that the Magistrate Judge failed to address the ALJ's "failure to review and weigh the other opinion evidence." (*Id.*)

There is a legitimate question as to whether Plaintiff even raised this issue before the Magistrate Judge. The listing of issues in her opening brief does not specifically identify a failure to review and weigh opinion evidence.[5] (*See* Pl.'s Opening Brief at 2.) But the listed issues do question whether the ALJ's finding at Step 3 is undermined by the failure to consider "objective test results from the Vineland-II" and whether the ALJ should have included additional limitations in Plaintiff's RFC "based on OASIS test results and other evidence not discussed by the ALJ." (*Id.* at 2.) In addition, she argues that the ALJ failed to consider the objective test data from Vineland-II and that neither the Medical Expert nor the ALJ discussed or mentioned other evidence, including informa-

---

[5]The Magistrate Judge specifically informed Plaintiff that her motion for summary judgment shall contain a section for "Issues Presented" that contains a "statement of each issue presented for review, set forth in separate numbered paragraphs." (*See* Scheduling Order (doc. 18) at 2.) That order also states: "Any issue not listed in this section will be deemed abandoned." (*Id.*) To emphasize the point, the order further states: **The issues before the Court are limited to the exact issues properly raised in accordance with paragraph 1 [(the Issues Presented section)] and argued in accordance with paragraph 3 [(the Argument section)]. Any issue not properly raised in Plaintiff's brief will not be addressed and may be deemed abandoned.**" (*Id.* at 3 (emphasis in original).)

tion within an evaluation of Dr. D'Angelo. (*Id.* at 12, 15.) She later argues that "had the ALJ considered the testing evidence and testimony, he could have better assessed [her] mental RFC." (*Id.* at 20.) She further argues that the ALJ did not include a supervision limitation in her RFC even though such limitation was suggested by the vocational counselors and Dr. D'Angelo. (*Id.* at 21-22.) Nevertheless, despite these arguments and the listed issues, Plaintiff never directly contends in her opening brief that the ALJ failed to review and weigh the opinions of Dr. D'Angelo or the vocational counselors.

In response, the Commissioner similarly did not list as an issue the ALJ's failure to review and weigh the other opinion evidence. (*See, generally*, Resp. at 1-23.) She responds to Plaintiff's arguments about not discussing isolated evidence by pointing out that the Fifth Circuit does not require an ALJ to specifically address all rejected evidence. (*See id.* at 11 (citing *Falco v. Shalala*, 27 F.3d 160, 163 (5th Cir. 1994).) Viewing the response as a whole, it is clear that the Commissioner did not interpret Plaintiff's opening issues as including a failure of the ALJ to review and weigh opinion evidence.

In reply to the Commissioner's reliance on *Falco*, Plaintiff – for the first time – unambiguously states that the ALJ did not weigh objective test results or articulate a reason for rejecting them. (*See* Reply at 4.) But even then she made the statement to distinguish the Commissioner's reliance on *Falco*. (*See id.*) The reply brief also mentions that the ALJ erred by failing to discuss or mention the objective OASIS test results or the need for a job coach. (*Id.* at 9.)

To the extent Plaintiff's original briefing raised a failure of the ALJ to review and weigh evidence, the Magistrate Judge considered it when she stated:

> Although Plaintiff points to other factors and testing techniques that she believes the

ALJ should have given more weight to, substantial evidence nevertheless supports his decision, and it is not within the Court's power to reweigh the evidence or substitute its own judgment for that of the Commissioner. Further, the ALJ's failure to discuss each piece of evidence in the medical record does not warrant reversal.

(FCR at 10 (citations omitted).)  Given the ambiguous briefing on the issue, the Magistrate Judge approached the issue in a reasonable and permissible manner.[6]  That the Magistrate Judge did not specifically address a failure to review and weigh opinion evidence is justified by the ambiguity of the briefing on the issue and the specific instructions and admonitions in the Scheduling Order. Nevertheless, to give Plaintiff every benefit of the doubt, the Court will examine the issue through the specific objection asserted.

In his decision, the ALJ specifically considered Dr. D'Angelo's opinion. (*See* Tr. at 27-28.) And the ALJ stated generally that he "considered opinion evidence in accordance with the requirements of 20 CFR 404.1527 and 416.927 and SSRs 96-2p, 96-5p, 96-6p and 06-3p." (Tr. at 26.) Despite that general statement, however, the ALJ's decision reflects no direct weighing of Dr. D'Angelo's opinion or any consideration whatsoever of the opinions of the vocational counselors. (*See, generally*, Tr. at 22-31.)  Standing alone, the general statement does not comply with the regulatory requirements – compliance requires the ALJ to set out the regulatory factors or analyze each factor. *Qualls v. Astrue*, 339 F. App'x 461, 466 (5th Cir. 2009) (per curiam).

Under the applicable regulations and social security rulings, the ALJ should have considered and weighed the opinions of Dr. D'Angelo and the vocational counselors. *See* 20 C.F.R. §§ 404.1527(b) and 416.927(b) (both stating that "we will always consider the medical opinions in your

---

[6]With the specific instructions and admonitions in the Scheduling Order, the Court would expect an issue that the ALJ did not properly review and weigh opinion evidence to be definitively set out in the issues section of the opening brief rather than ambiguously sprinkled throughout the argument section of that brief followed by a slightly more definitive statement in the reply brief.

case record together with the rest of the relevant evidence we receive"); 20 C.F.R. §§ 404.1527(c)

and 416.927(c) (both stating "[r]egardless of its source, we will evaluate every medical opinion we

receive"); *Policy Interpretation Ruling Titles II and XVI: Considering Opinions and Other Evidence

from Sources Who Are Not "Acceptable Medical Sources" in Disability Claims; Considering Deci-

sions on Disability by other Governmental and Nongovernmental Agencies*, SSR 06–03p, 2006 WL

2329939, at *2-6 (S.S.A. Aug. 9, 2006) (recognizing that opinions from "non-medical sources", such

as counselors who have seen the claimant in their professional capacity, are to be considered similar-

ly to medical opinions under 20 C.F.R. §§ 404.1527 and 416.927). But even if the ALJ procedurally

erred by not more fully considering and weighing the opinions, reversal and remand is only required

when the error affects the substantial rights of the plaintiff. *See Taylor v. Astrue*, 706 F.3d 600, 603

(5th Cir. 2012). Absent an error that affects the substantial rights of a party, administrative proceed-

ings do not require "procedural perfection." *Id.* Procedural errors affect the substantial rights of a

claimant only when they "cast into doubt the existence of substantial evidence to support the ALJ's

decision." *Morris v. Bowen*, 864 F.2d 333, 335 (5th Cir. 1988). Remand is required only when there

is a realistic possibility that the ALJ would have reached a different conclusion absent the procedural

error. *January v. Astrue*, 400 F. App'x 929, 933 (5th Cir. 2010) (per curiam). For the reasons that

follow, the ALJ's consideration and weighing of the opinions of Dr. D'Angelo and the vocational

counselors has not affected the substantial rights of the plaintiff in this action.

  First, contrary to Plaintiff's suggestion, Dr. D'Angelo did not opine that she required a job

coach or additional supervision to be able to work. He merely indicates that a "supported employ-

ment model might be offered" and that she "is likely to benefit from job coaching to learn her initial

work responsibilities due to her difficulties with concentration and learning of detailed verbal infor-

mation." (Tr. at 347.) And the ALJ specifically mentions these potential limitations in his decision. (Tr. at 28.) Dr. D'Angelo even concludes that Plaintiff "appears capable of competitive employment in jobs that do not exceed her intellectual and academic abilities." (Tr. at 346.)

Carter and Jenke are likewise indefinite in their opinions regarding a need for a job coach or additional supervision. Carter merely states that Plaintiff "will likely need on-the-job training with the aid of a job coach to learn work routines. She is likely to need a job that is structured and where employer expectations are clearly defined." (Tr. at 261.) He recognizes that Plaintiff "can benefit from on-the-job approaches to training" and "from a period of on-the-job training with the aid of a job coach to help her learn duties and work routines." (Tr. at 262.) He also notes that Plaintiff "appears to learn best from the visual presentation of information" as revealed by the OASIS and the MAND Bimanual Dexterity tests. (Tr. at 265.) The testifying Medical Expert ("ME") agreed that Plaintiff is better suited for jobs that allow for visual learning. (Tr. at 57.) And the ALJ recognized the need for visual learning in his decision. (Tr. at 28, 30.) Despite Plaintiff's limitations, Carter identifies several jobs likely to be appropriate for her. (Tr. at 262.)

Jenke states that Plaintiff is an "appropriate candidate for Supported Employment Services" due to her "learning challenges." (Tr. at 414.) He also states that Plaintiff would benefit from having "access to additional support for job placement and guidance on the job to master required responsibilities once placed." (*Id.*) In his "professional opinion" Plaintiff "will need ongoing vocational services to obtain and maintain employment." (*Id.*)

While Jenke makes a definitive professional opinion, neither he nor Carter nor Dr. D'Angelo directly state that Plaintiff must have a job coach or additional supervision. Furthermore, in making his RFC determination, the ALJ accepted as persuasive the ME's opinion, which concludes that "the

claimant is capable of only simple one or two step work tasks with no detailed work and that she would be treated as illiterate academically for vocational purposes and needed visual learning because of her learning disability." (Tr. at 28.) With that acceptance, the ALJ specifically found that Plaintiff "is limited mentally to unskilled work not requiring literacy." (*Id.*) The ALJ also recognized that the unskilled occupations identified by the Vocational Expert ("VE") "are visual and are learned on the job and have no requirements for reading, writing, or math." (Tr. at 30.) Upon questioning about the ME's visual learning limitation, the VE testified that the limitation basically means that the claimant should be limited to "unskilled work which are jobs that are learned on the job as opposed to some form of classroom training." (Tr. at 62.) The VE further testified that "unskilled work would be consistent with that type of visual learning as those jobs are normally taught. They're taught on the job. A person is working with somebody and watching them do it, and then they try it themselves." (*Id.*) Reading the ALJ decision as a whole, his mental RFC determination includes the visual learning limitation by limiting Plaintiff to "unskilled work not requiring literacy." Because the visual learning limitation adequately encompasses any need for a job coach or additional supervision, it is difficult to see how any failure of the ALJ to consider or weigh the noted opinions affected his decision or his mental RFC determination.

The ALJ, moreover, incorporated the supervision limitation within his questioning to the VE. The VE identified about 900,000 jobs in Texas where job functions are learned on the job. (Tr. at 61.) More specifically, the VE stated: "The demonstration here is visual. They actually work with them for a few days or a week, however long it takes. There is no requirement specifically for

reading, writing, or performing arithmetic functions."[7] (*Id.*) The ALJ recognized these limitations as being part of Plaintiff's learning disorder and her illiteracy. (Tr. at 30.) He relied on the testimony of the VE to carry his burden at Step 5.[8] (*Id.*) Any failure of the ALJ to consider or weigh the opinions of Dr. D'Angelo or the vocational counselors does not cast doubt on whether substantial evidence supports the ALJ's decision. Given the incorporation of the supervision limitation within the testimony of the VE, the Court finds no realistic possibility of a different conclusion by the ALJ had he considered and weighed those opinions. The failure to weigh and consider them does not render the ALJ's mental RFC determination legally insufficient or even cast doubt on the determination.

For these reasons, any failure of the ALJ to consider and weigh the opinions of Dr. D'Angelo or the vocational counselors does not affect the substantial rights of Plaintiff. Reversal and remand is thus not required for any such failure. In the context of this case, such failure constitutes harmless error. The Magistrate Judge properly recommended that reversal and remand is not warranted.

---

[7]This testimony of the VE is completely consistent with a need for a job coach or closer supervision. In response to a question from counsel about the meaning of "providing supportive employment services and a recommendation for a job coach," the VE explained:

> The idea of a job coach is kind of a transitional step where you're going to take an individual and put them on the job where there will actually be someone there working side by side with them. It can be for a short duration, a week, I've seen it as long as three to six months. In effect the person is going to help them transition onto the job, show them how to do things, make sure they know how to use the time clock, and intervene if there are problems with coworkers or supervisors. In effect, trying to transition the person into work.

(Tr. at 63-64.)

[8]While claimants must carry the burden to show they are disabled through the first four steps of the five-step evaluative process, the Commissioner has the burden at the fifth step to "show that there is other substantial work in the national economy that the claimant can perform." *Audler v. Astrue*, 501 F.3d 446, 448 (5th Cir. 2007).

**C.**   <u>**Failure to Apply Appropriate Legal Standard of Judicial Review**</u>

Plaintiff also objects that the Magistrate Judge failed to apply the appropriate legal standard of judicial review. (Obj'ns at 7-8.) The Court easily disposes of this objection. The Magistrate Judge accurately set out and applied the governing standard for judicial review in actions appealing a decision to deny SSI and DIB under the Social Security Act. As stated by the Magistrate Judge, judicial review in these types of cases "is limited to whether the Commissioner's position is supported by substantial evidence and whether the Commissioner applied proper legal standards." (FCR at 8.) Plaintiff does not quarrel with this standard. She instead argues that the decision to deny benefits must stand or fall based on the reasoning set out by the ALJ, as adopted by the Appeals Council. The Court has no disagreement with that proposition. *See Newton v. Apfel*, 209 F.3d 448, 455 (5th Cir. 2000). But Plaintiff apparently seeks to extend the proposition beyond its intended boundaries.

Plaintiff essentially premises this objection on the fact that the Magistrate Judge addressed and considered arguments set out in the briefing of this case instead of relying on specific reasoning set out in the ALJ's decision. The Magistrate Judge rejected Plaintiff's argument that SSR 85-16 mandates an RFC limitation for close supervision. That the Magistrate Judge relied on matters and arguments within the Commissioner's briefing does not reveal any failure to apply the appropriate standard of review. Parties in social security cases often make arguments that are not directly addressed by the ALJ's decision. The *Newton* proposition does not mean that the Court cannot directly address those arguments. Such interpretation is unwarranted and ill-advised. The stand-or-fall proposition in *Newton* merely recognizes that the courts may not affirm or deny on grounds not stated by the ALJ, as adopted by the Appeals Council.

In this case, the Magistrate Judge rejected Plaintiff's theory on grounds not stated by the ALJ,

but still affirmed the decision on reasons stated in the ALJ's decision. In doing so, the Magistrate Judge did not violate the proposition stated in *Newton*. Furthermore, that the ALJ failed to consider other sources who provided opinions regarding a need for additional supervision or supported employment does not mean that the ALJ based his RFC determination on an erroneous rationale. As stated in the previous section, the ALJ's RFC determination included a need for additional supervision and supported employment. Furthermore, any procedural error of the ALJ in failing to consider and weigh opinions of Dr. D'Angelo and two vocational counselors is harmless error. Contrary to Plaintiff's suggestion, the Magistrate Judge did not overstep her role in recommending that the Court affirm the decision of the Commissioner.

**III.   Conclusion**

After reviewing all relevant matters of record in this case, including the Findings, Conclusions, and Recommendation of the United States Magistrate Judge and the filed objections, in accordance with 28 U.S.C. § 636(b)(1) and Fed. R. Civ. P. 72(b)(3), the Court finds that the Findings and Conclusions of the Magistrate Judge are correct. It has conducted a de novo review and determination as to the issues to which Plaintiff has specifically objected and as to the discussed issue regarding SSR 85-16. Having reviewed the remainder of the Findings, Conclusions, and Recommendation of the Magistrate Judge for clear error, it is satisfied that there is no clear error on the face of the record. Accordingly, the Court hereby accepts the Findings and Conclusions of the Magistrate Judge as the Findings and Conclusions of the Court as supplemented and discussed herein. Accordingly, it accepts the recommended disposition and **DENIES** Plaintiff's Motion for Summary Judgment (doc. 21), **GRANTS** Defendant's Motion for Summary Judgment (doc. 23), and **AFFIRMS** the Commissioner's decision to deny Supplemental Security Income and Disability

Insurance Benefits to Plaintiff Debra Ware.

      **SO ORDERED this _29th_ day of ~~June~~, 2013.**

                             **JORGE A. SOLIS**
                             **UNITED STATES DISTRICT JUDGE**

14